## In re CLUB EVERGREEN, Inc.

District Court, D. New Jersey.
May 27, 1940.

Milton B. Levin, of Newark, N. J., for receiver and trustee.

Sidney Alexander, of Paterson, N. J., for chattel mortgagee.

FAKE, District Judge.

It appears from the testimony taken before the referee and as well from the stipulated facts presented for his consideration, that one Brown, being desirous of purchasing a certain cafe and restaurant business owned by one Bollinger, and being without sufficient funds to purchase the same, obtained an introduction to Finley. Brown took Finley to the place of business and after an inspection, Finley consented to loan Brown the sum of $5,000 with which to purchase it. The said loan to be advanced and secured upon such terms and conditions as Finley's attorney Alexander might design for the purpose.

Alexander worked out the following plan: First: A corporation was to be formed known as "Club Evergreen Inc." Second: Brown was to purchase by bill of sale from Bollinger certain of the chattels utilized in the business and obtain a lease and transfer of the liquor license covering the premises. Third: Upon obtaining these things, Brown was to execute and deliver a chattel mortgage to Finley covering the chattels for the sum of $4,500 and then transfer his remaining rights therein to the corporation. Fourth: Finley was to enter into a written agreement with Brown, whereby Finley would pur-

chase 5 shares of the capital stock of the aforesaid corporation for the sum of $500 and agree to re-sell the same to Brown for $500 and 10% of the net profits of the business for the first year. Fifth: Finley was to advance $5,000 for the purposes aforesaid, and Sixth: Brown was to invest from $2,500 to $4,000 in the business.

Pursuant to the aforesaid plan, Alexander prepared a certificate of incorporation which was filed in the Passaic County Clerk's office on August 30, 1937, and filed in the Secretary of State's office on September 3, 1937, in conformity with the provisions of the Corporation Act.

On September 2, 1937, and after the filing of the aforesaid certificate in the County Clerk's office, Brown and Alexander met in the office of the attorney representing Bollinger, and there, Alexander gave two checks payable to Brown; one for $4,500 and the other for $500, both of which were endorsed by Brown to Bollinger and paid in due course. Whereupon Bollinger delivered his bill of sale to Brown covering the aforesaid chattels. Brown then executed and delivered a chattel mortgage to Finley covering, among other things, the chattels mentioned in the bill of sale. This mortgage was recorded in the Essex County Register's office on the next day, and Brown satisfied Alexander as to his contribution of funds.

On the next day, to wit, September 3, 1937, the first meeting of Club Evergreen, Inc., was held, and after the election of directors, it was resolved to purchase from Brown all his right, title and interest in and to the aforesaid chattels and take over the lease which Brown had obtained covering the place of business. The corporation also assumed and agreed to pay the said chattel mortgage and Brown executed and delivered a bill of sale to the corporation covering the chattels involved.

Neither of the bills of sale hereinbefore mentioned was recorded. I can think of no reason, under the New Jersey law, why they should be, since their recording would not constitute constructive notice to any one.

The liquor license covering the premises was transferred to Club Evergreen, Inc., on September 20, 1937.

On April 11, 1938, Club Evergreen, Inc., was adjudicated a bankrupt, and question now arises as to the validity of the above mentioned chattel mortgage. The Referee has held it invalid as in fraud of creditors, and the matter comes here on petition to review his action.

Prior to the consummation of the plan hereinbefore set out, there were no creditors or creditors' rights involved. So the question here is confined to the rights of creditors who became such after all the foregoing transactions had taken place.

In his certificate, the Referee states with clarity the reasoning upon which he concluded that the mortgage was invalid. He says: "The mortgage shows that there was property mortgaged by Brown. The mortgagee knew and participated in the transfer from Brown to the bankrupt of the property affected by the mortgage. He therefore, by his own act, made it possible for the bankrupt to place itself before its creditors as the owner of property entirely free of any such mortgage as far as they could discover from the records. He permitted and participated in a transaction which produced this result. Is he now in a position to come forward and assert his lien against creditors who have relied on the record which he created and permitted? I cannot think that that is a tenable position. * * *" He "was charged with knowledge that there would be creditors of the bankrupt who would have no notice of the mortgage."

The New Jersey statute dealing with conveyances in fraud of creditors makes no distinction between real and personal property. It provides: "Every conveyance, grant or alienation of real estate, or goods and chattels, or of any estate or interest therein, whether made by writing or otherwise * * * which have been or shall be contrived in fraud, covin or collusion, with intent to hinder, delay or defraud creditors * * * shall be deemed and taken * * * to be utterly void and of no effect, * * *." 1 Revised Statutes 1937, 25:2–3, N.J.S.A. 25:2–3. The original Act upon which the above citation is based, long predates the issues here.

In Washington Nat. Bank v. Beatty, 1910, 77 N.J.Eq. 252, 76 A. 442, 443, 140 Am.St.Rep. 555, the Court of Errors and Appeals of New Jersey held: "The true rule is that, when a conveyance is attacked by a subsequent creditor, the question to be determined is whether the conveyance was fraudulent. The question is the same when attacked by an existing creditor; the only difference is the method of proof. When an existing creditor attacks the conveyance, and shows that his

debt was incurred before, and was existing at the time when, the conveyance was made, the law, without further proof, raises a conclusive presumption of fraud so far as that creditor is concerned. When, however, the conveyance is attacked by a subsequent creditor, he must prove fraud as a fact; that is, 'an actual fraudulent intent to defraud some creditor.' By some creditor is meant any creditor, either existing at the time when the conveyance is made or subsequently." The Uniform Fraudulent Conveyance Law provides to the same effect. 1 Revised Statutes 1937, 25:2–13, N.J.S.A. 25:2–13.

■■ With the foregoing rule in mind we now take up the bill of sale made from Bollinger to Brown, delivered on September 2nd. Here we find Alexander, the duly authorized agent of Finley, paying over to Brown $5,000 of Finley's money and Brown in turn paying the same over to Bollinger for the bill of sale. There is nothing in the record to show that the consideration was inadequate, nor are any creditors' rights involved in any way in the transaction. This step in the aforesaid plan is therefore valid and Brown became seized of title to the chattels, if the plan as above outlined will stand the test of the above rule.

It appears, as to the chattel mortgage delivered on September 2nd and recorded the next day, that Brown gave Finley nine (9) notes for $500 each, to cover $4,500 of the money paid for the bill of sale. This was money honestly due and owing by Brown to Finley as appears above. The fact that the affidavit recites ten (10) notes and then described nine (9) in detail, indicates a mere clerical error and does not destroy the effectiveness of the affidavit. Again, there being no creditors' rights in consideration having passed between the parties, the mortgage is likewise valid if the plan under which it was delivered will stand the test of the rule.

volved, either past or present, and a full
The facts here are vitally different from those found in Cross v. Printing Corporation, 89 N.J.Eq. 378, 104 A. 727, 728, and cited by the Referee. There it was found that title had passed through an agent Sumner, and that he "never had a present property, either actual or potential, in the things mortgaged." Here the reverse is true. Brown did have legal title, based upon a full consideration, when he mortgaged the chattels.

Taking the plan now as a whole; does it constitute a scheme to hinder, delay or defraud subsequent creditors?

A study of the extended testimony taken before the Referee, and as well of the exhibits, fails to disclose that any creditor ever asked for and received a financial statement from the bankrupt, nor is there any evidence which would indicate that any creditor was misled by reason of the fact that the chattel mortgage was made by Brown and not by Club Evergreen, Inc. No one, as far as the evidence goes, ever attempted to examine into the title which the Club had, either as to the real estate it occupied, or the personal property thereon. How then can it be said that any creditor was misled when as a fact no one was? The subsequent creditors have not shown, that because of prior existing creditors, the mortgage was void at the time of its delivery and therefore void as to them. The burden therefore falls upon the creditors to "prove fraud as a fact." There is no testimony directly indicating that the plan was conceived in iniquity for the purpose of avoiding future creditors. If fraud is found it must be based upon the acts and conduct of the parties. It can not be assumed without evidence that bringing into existence of the corporate entity was a fraudulent factor. It would rather be assumed that the corporation came into existence for no other reasons than the advantages which the Corporation Act legally affords. But there is something in the evidence which does indicate why Alexander set up the corporation. Finley, his client, wanted something more than 6% on his investment. He could not take more from Brown, without entering the sphere of usury, so the corporation was set up and an attempt made to avoid usury by investing $500 of the $5,000 in the stock of the corporation under which Finley could participate in the profits. Aside from the usual reasons for corporate existence, this explains why the corporation in question came into being and it was not for the purpose of avoiding creditors. This conclusion is greatly strengthened by the fact that both Finley and Brown were looking to profits and not losses, thus clearly negativing the idea of a scheme to defraud future creditors. Moreover, Finley took no part whatever in the running of the business. He attended at the opening night and on one other occasion, and after he loaned the money, as above outlined, he advanced several thousands more, in an attempt to save

the business. If he had been in a scheme to defraud creditors he would then have sought further security to head off the creditors, and there is no evidence that he did any such thing. True, he held Brown's stock but this afforded him no preference over the creditors.

Before it can be found, that because the chattel mortgage was given by Brown, instead of the corporation, fraud appears, there must be some evidence of fraud. The bare facts of mortgaging the chattels and then transferring them to the corporation subject to the mortgage, does not constitute fraud. The rule is as above stated and the creditors must prove "an actual fraudulent intent to defraud some creditor." There is no evidence in this case to that effect. It is immaterial that Finley, allowed the mortgage to be thus executed, delivered and recorded. There being no evil intent at the time, it was valid. Nor can it be found, in the absence of fraud on his part, that he was charged with knowledge that there would be subsequent unpaid creditors of the bankrupt. There is no presumption either way on this point.

An order will be entered reversing the action of the Referee.